Of Counsel:

PAUL ALSTON          1126-0
NEIL F. HULBERT      1143-0
MEI-FEI KUO          7377-0
ALSTON HUNT FLOYD & ING
1001 Bishop Street, 18th Floor
Honolulu, Hawai`i  96813
Tel. No:  (808) 524-1800
Fax No.:  (808) 524-4591
Email:    palston@ahfi.com

TOM C. LEUTENEKER    732-0
CARLSMITH BALL LLP
One Main Plaza, Suite 400
2200 Main Street, P.O. Box 1086
Wailuku, Maui, Hawai`i  96793-1086
Tel. No.: (808) 242-4535
Fax No.:  (808) 244-4974
E-mail:   tcl@carlsmith.com

Attorneys for Defendant
MANDALAY PROPERTIES
HAWAI`I LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| COUNTY OF KAUA`I,<br><br>          Plaintiff,<br><br>   v.<br><br>MANDALAY PROPERTIES HAWAI`I LLC, a Hawai`i limited liability company; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS, CORPORATIONS AND/OR OTHER ENTITIES 1-100; DOE GOVERNMENTAL AGENCIES 1-100,<br><br>          Defendants. | CIV NO. CV05-00052 KSC<br>(Other Civil Action)<br><br>[CONSOLIDATED CASES]<br><br>**DEFENDANT MANDALAY PROPERTIES HAWAI`I LLC'S REPLY TO PLAINTIFF COUNTY OF KAUAI'S MEMORANDUM IN OPPOSITION TO DEFENDANT MANDALAY PROPERTIES HAWAI`I LLC'S RENEWED AND SUPPLEMENTED MOTION FOR SUMMARY JUDGMENT FILED NOVEMBER 30, 2006, FILED JANUARY 2, 2007; CERTIFICATE OF COMPLIANCE WITH WORD LIMIT; CERTIFICATE OF SERVICE** |

```
                                    )
_____     )
                                    )
MANDALAY PROPERTIES HAWAII LLC,     )   CIVIL NO. 03-00711 BMK DAE
                                    )
          Plaintiff,                )   Hearing
                                    )   Date  : January 17, 2007
      vs.                           )   Time  : 9:30 a.m.
                                    )   Judge : Kevin S. C. Chang
ISLAND ACCESS COALITION,            )
WILLIAM YOUNG, individually,        )
and DOE DEFENDANTS 1-100,           )   Trial Date: May 1, 2007
                                    )
          Defendants.               )
                                    )
                                    )
                                    )
_____     )
```

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . 7

     A.   The Questioned Deeds Are Valid . . . . . . . . . . 7

          1.   In 1860, Conveyances by the Board of
               Education Did Not Require a Royal Patent  . . . 7

          2.   Hoopii Cummings Conveyed All of Her Interest   12

     B.   The County Offers No Evidence of a Pre-1892
          *mauka-makai* Road . . . . . . . . . . . . . . . 13

     C.   There Is No Evidence of a Public Right-of-way  . . 15

     D.   Any Prescriptive Easement Has Been Lost by
          Reverse Adverse Possession . . . . . . . . . . . 16

     E.   The 1977 Letter and Map Are an Admission
          There Is No Public Road and/or Right-of-way  . . . 17

     F.   The County Cannot Acquire an Access Across the
          Reservation Without Paying Just Compensation . . . 18

III. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . .  16

*CelotexCorp. V. Catrett,* 477 U.S. 317, 106 S.Ct. 2548(1986)   16

*NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410(9th Cir. 1994)   . . 7

*Sensible Traffic Alternatives And Resources, Ltd. v.*
    *Federal Transit Administration*, 307 F.Supp.2d
    1149, 1157 (D. Haw. 2004) . . . . . . . . . . . . . . . 10

*United States v. Torres*, 2006 WL 3826793
    (D. Haw. Dec. 27, 2006) . . . . . . . . . . . . . . . . .7

### STATE CASES

*In re Boundaries of Pulehunui,* 4 Haw. 239 (1879) . . . . . 8, 9

*Cornwell v. Board of Education*, 4 Haw. 540 (1882) . . . . . . .9

*Exotics Hawaii-Kona, Inc. v. E.I. DuPont DeNemors*,
    104 Haw. 358, 90 P.2d 250 (2004) . . . . . . . . . . 11

*Hansen v. Walker*, 175 Kan. 121, 259 P.2d 242 (1953) . . . . . 10

*Perry v. Lucas*, 11 Haw. 350(1898) . . . . . . . . . . . . . . 10

*Richards v. Midkiff*, 48 Haw. 32, 396 P.2d 49 (1964) . . . . . 13

*State v. Hawaiian Dredging Co.*, 48 Haw. 152, 178, 397
    P.2d 593 (1964) . . . . . . . . . . . . . . . . . . . 12

*State Savings & Loan Assoc. v. Kauaian Development Co.,*
    *Inc.*, 62 Haw. 188,613 P.2d 1315 (1980) . . . . . . . . 12

ii

**FEDERAL RULES**

Fed. R. Civ. Proc., Rule 56   . . . . . . . . . . . . . . .   16

Fed. R. Evid. 602   . . . . . . . . . . . . . . . . . . . .   18

Fed. R. Evid. 801(d)(2)(D)   . . . . . . . . . . . . . . . .   17

**MISCELLANEOUS**

Powell, Real Property §81-A.07[3][f]   . . . . . . . . . . .   13

**DEFENDANT MANDALAY PROPERTIES HAWAI`I LLC'S REPLY TO PLAINTIFF COUNTY OF KAUAI'S MEMORANDUM IN OPPOSITION TO DEFENDANT MANDALAY PROPERTIES HAWAI`I LLC'S RENEWED AND SUPPLEMENTED MOTION FOR SUMMARY JUDGMENT FILED NOVEMBER 30, 2006, FILED JANUARY 2, 2007**

## I.    INTRODUCTION

Defendant Mandalay Properties Hawai`i LLC ("Mandalay") hereby replies to the Memorandum in Opposition ("Opposition") belatedly filed by Plaintiff County of Kaua`i ("County") on January 2, 2007.

None of the County's arguments has any merit.  Mandalay is entitled to summary judgment determining that there is no public road and/or right-of-way across the Widemann Reservation ("Reservation").  The flaws in the County's position are numerous.

First, the County's argument that Mandalay's title to the Reservation is "broken" is wrong.  The County contests the validity of (a) the 1860 Deed by R. Armstrong, President of the Board of Education ("Board of Education Deed") (Exh. 4), by erroneously claiming a government patent was required, and (b) the 1913 Deed between Parker Cummings and Charles A. Rice ("Cummings Deed") (Exh. 9) by erroneously claiming Hoopii Cummings did not convey her one-half interest.[1]  Not only has the County previously admitted that Mandalay **owns** the Reservation (*see* Motion at Section II.A.2 at 5-6) but also the record

---

[1]  The County does not challenge the deeds conveying the other one-half interest.

reflects -- and Judge Ezra found -- Mandalay's chain of title is clear and unbroken. *See* Exh. 1, Order, at 4-7, and Exhs. 4-19. Further, the questioned deeds are valid. Specifically:

(1) The Board of Education Deed is valid because, in 1860, the Board had the statutory powers of a corporation and was empowered to, and did, convey School Lands by deed without the necessity of a royal patent. And,

(2) The Cummings Deed is valid because it was signed by both Parker and Hoopii Cummings, husband and wife, and Hoopii "quitclaimed" all of her one-half interest.

Second, the County has offered **no** evidence of any *mauka-makai* road, public or private, in the Reservation before 1931, never mind before 1892. Under the Highway Act of 1892, this failure is fatal to the County's claim of a public road. As to a pre-1892 public road, Judge Ezra said last year the question of fact that remained unanswered was only whether the *mauka-makai* road claimed by the County was the same road mentioned in the ancient Land Commission Notes. *See* Exh. 1, Order at 17. The County unequivocally admits they are not the same road.[2] Obviously, a road "running parallel to the shoreline" cannot be the disputed *mauka-makai* road. As to a post-1892 private road, Judge Ezra ruled that even if a road existed there was no

---

[2] Opposition at 21 ("two kamaaina witnesses testified [before the Board of Land Commissioners] that the kuleana was bounded by a 'public road and bridge'[sic] running parallel to the shoreline and along the north-south boundary of the kuleana").

evidence of the necessary surrender, abandonment and dedication. *See* Exh. 1, Order, 18-24.  The County offers nothing new on this point.

Third, the County improperly re-argues points previously decided by Judge Ezra without specifically showing he erred in any respect.  Specifically,

(1) Judge Ezra has already ruled that "nothing in Equity 80 or in Resolution No. 9 . . . indicates that the County accepted ownership of what was previously a private road" and "that the proceedings in Equity 80 did not involve the Widemann Reservation."  Exh. 1, Order at 19, 22 and 24.

(2) Judge Ezra has already ruled that there is "nothing in the record to indicate that through Resolution No. 9, the County adopted or accepted any road or portion thereof extending into the Widemann Reservation." Exh. 1, Order at 14.

(3) The County argues that Resolution 9 and the language in the Exchange Deed in Equity 80 has "evidentiary value" as to whether a road was opened and used in 1932. Opposition at 25.  But, even if that were true, it says nothing about the existence of a road before 1892, or whether it was open to the public without permission from the Reservation's owners or his tenant.  Further, Judge Ezra has already found it "more likely that the

name 'Road to Papa`a Beach' was used as a descriptive
or directional term as opposed to reflecting any
intention that the entire length of the road had been
abandoned." Exh. 1, Order at 23.  And, if Papa`a Road
was already open all the way to the beach, it would
make no sense that the then-owner of the Reservation
sought to require in Equity 80 that Papa'a Road extend
to the Reservation's *mauka* boundary.  *See* County's Exh.
I.

Fourth, the County's arguments based upon Equity 80 are
meritless because Judge Ezra ruled that the Reservation was not
involved in, and was not subject to, the partition in Equity 80.
Exh. 1, Order at 19, 22 and 24.  The maps and orders in Equity
80, thus, cannot be used against Mandalay.

Fifth, the County does not dispute the evidence and
Mandalay's arguments regarding the non-existence of a
prescriptive right-of-way in any meaningful fashion.

Sixth, ¶ 8 of the Declaration of George Yamamoto is
inadmissible to defeat the Motion because the County has not
demonstrated he has the personal knowledge required to make him
competent to testify about the location of the right-of-way
proposed to Mr. Gerbode.  The 1977 Letter drafted by Mr. Yamamoto
does not describe the location of the right-of-way; it only
refers to the attached map, and Mr. Yamamoto says nothing about
the map.

The reason for Mr. Yamamoto silence regarding the map is obvious:  it shows the County wanted to survey a right-of-way on the Tax Map parcel that included the area near Papa`a Road, but not the hillside where the trial was later created.  In fact, the map was highlighted to show an extension of Papa`a Road toward the beach, **not** a walking trail on the hillside outside the Reservation's southern boundary, as demonstrated by this enlargement of the relevant area from the map attached to the 1977 Letter.[3]  *See also* Exh. 2.



---

[3]    Mr. Yamamoto stated in his declaration that "[t]he location of the proposed beach access is located at approximately the same location where Easement P-1 currently exists."  Yamamoto Dec. at ¶ 8.  Easement P-1, is a pedestrian access granted by Mandalay to the County in 1999 (Exhs. 3 and 44), however, it is

Mr. Yamamoto's declaration cannot be used to contradict, dispute or undermine the unambiguous map. He does not say, for example, that he has personal knowledge that Mr. Morita attached the wrong map in error, or that a bogus map was somehow later substituted for the correct one. All he says, almost 30 years after the fact, is that he remembers the County wanted a right-of-way on the southern boundary (which, of course, is an implicit admission it did not already have a better one).

Seventh, assuming there were some validity (which there is not) to the County's argument about sovereign prerogatives to create roads and easements for the public good, it has no standing to pursue that issue since it is not the sovereign. And even if it were, property may not be taken by the County without just compensation.

Finally, while the County continually states that certain issues must be decided by the trier of fact, it forgets that this is a bench trial and the Court is the trier of fact. All the possible facts are now before the Court, they reflect no genuine issues of material fact, and the Court may rule. The County has failed to demonstrate facts establishing essential elements of its claims regarding a public road and/or prescriptive right-of-way. Accordingly, the Motion should be granted.

---

nowhere near Papa`a Road. *See* Declaration of Wagner in Support of Reply at ¶ 5.

## II.  ARGUMENTS

### A.  The Questioned Deeds Are Valid

#### 1.  In 1860, Conveyances by the Board of Education Did Not Require a Royal Patent

The County claims that the 1860 Deed by R. Armstrong, President of the Board of Education, as grantor (Exh. 4), is defective because (1) it is not accompanied by a royal patent/grant, and (2) there was no consideration.  These arguments are indisputably wrong.

The Board of Education Deed is dated January 30, 1860. The efficacy of this deed depends on the statutes in effect on January 30, 1860.[4]

The County claims that C.C. 1859, § 43 required a royal patent signed by the King and countersigned by the Kuhina Nui and the Minister of the Interior to validate any conveyance by the Board of Education.  Opposition at 1-7.  The County ignores C.C. 1859, §§ 693-756 and 1426, which specifically established the Board of Education's powers.[5]  Exh. 45.

Section 695 provided that the Board of Education "shall have all the powers and privileges of a corporation."  *Id.*

_____

[4]  Inexplicably, the County continues to cite to 1880 legislation to argue that a patent grant was required in 1860. *See* Opposition at 5, n. 9.  The 1880 statute cannot govern the manner of conveying School Land 20 years earlier.

[5]  "It is a well-settled canon of statutory interpretation that specific provisions prevail over general provisions". *United States v. Torres*, 2006 WL 3826793, *7 at fn. 7 (D. Haw. Dec. 27, 2006)(quoting *NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1415 (9th Cir. 1994)).

Section 1426 provided: "Every corporation. . .shall have the power. . . to convey . . . real . . . estate. . . ." *Id.* And, consistent with corporate powers, Section 749 stated:

> The President of the Board of Education,
> under the direction of said Board, is hereby
> authorized to dispose of any of the lands
> which have been, or hereafter may be set
> apart for the general purposes of education,
> either by sale, lease, or otherwise.

*Id.* Therefore, while in 1860 some conveyances of government land required a royal patent,[6] conveyances of School Land did not.[7]

There appears to be no case that requires a royal patent for conveyances of School Land in 1860. Neither of the cases relied on by the County reflect such a holding. *In re*

---

[6] It was not until 1880 that a royal patent was explicitly required for the conveyance of school land. Exh. 46, An Act to Authorize the Issuance of Royal Patents for School Lands and School Sites Sold by the Board of Education (L. 1880).

[7] State of Hawaii Bureau of Conveyances records show that in practice, both before and after 1860, the Board issued deeds, not government patents, when it conveyed School Land, for example, in addition to the Board of Education Deed:

(1) Deed from R. Armstrong, President of the Board of Education to Pierce Hegarty, dated, May 28, 1856, recorded in Liber 7, Page 509 (Exh. 47);

(2) Deed from R. Armstrong, President of the Board of Education to William Webster, dated January 7, 1859, recorded in Liber 11, Page 218 (Exh. 48);

(3) Deed from K. Kaahumanu and M. Kekuanaoa, as President of Board of Education to D. Burns, dated October 23, 1860, recorded in Liber 13, Pg. 258 (Exh. 49); and

(4) Exchange Deed between M. Kekuanaoa and Kapoli and M. Kekuanaoa as President of the board of Education, dated May 1, 1861, recorded in Liber 15, Pg. 10 (Exh. 50).

*Boundaries of Pulehunui,* 4 Haw. 239 (1879), concerned land sold at auction by the Board of Education in 1854 (before the enactment of § 695 in 1859), for which the government issued royal patents. *Id.* at 249. The land was surrendered back to the Board in 1860. *Id.* Then, in 1875, the Board sold a portion of the same land at auction; once again, the government issued a royal patent. *Id.* While a royal patent was the subject of the case, the opinion does not say that a royal patent was required for the conveyance of School Land in 1860. Further, the first conveyance was in 1854, five years before the Board was granted corporate powers by § 695, and the second conveyance was in 1875, eleven years after the Board was stripped of it corporate powers.[8] The opinion says <u>nothing</u> relevant to this case.

The County's second case, *Cornwell v. Board of Education*, 4 Haw. 540 (1882) concerned a claim of misrepresentation regarding the boundaries of the land affected in *Pulehunui* that the Board resold in 1875. This case, like *Pulehunui*, says nothing about whether a royal patent was required in 1860, when the Board had corporate powers.

---

[8] C.C. 1859, §§ 693-756 was repealed in 1864 and replaced by similar, but not identical provisions. Exh. 51, L. 1864 §§ 32-38. While the Board was still authorized to dispose of School Land, the 1864 law did not include a corporate powers and privileges provision. When the Board had the powers of a corporation, obviously no royal patent was required. But when those powers were taken away, the general requirement of a royal patent for the conveyance of government land could apply. Since this change did not occur until 1864, it cannot govern the 1860 Board of Education Deed.

Here, consistent with its corporate powers, the Board of Education Deed recites that it is given "by and with the advice and consent of said Board and in accordance with Section 749 of the Civil Code."[9]  Exh. 4 at 1.  These facts and the statutes refute all the County's arguments about the Reservation remaining in the public domain.

The County is also wrong in saying the Board of Education Deed was not supported by consideration.  The deed clearly recites there was consideration.  Exh. 4.  *Hansen v. Walker*, 175 Kan. 121, 259 P.2d 242 (1953) (the presumption of consideration can be overcome only by evidence of no consideration at all).  The consideration recital is sufficient and cannot be questioned by the County, which is a stranger to the deed.  *Cf. Perry v. Lucas*, 11 Haw. 350, 352-53 (1898)(holding that the owners of Wailupe could not "complain" about the boundaries established by the Niu award, patent, and survey, which excluded the Wailupe lands).

Moreover, the County is precluded from challenging the Board of Education Deed by *res judicata*.  *See, e.g., Sensible Traffic Alternatives And Resources, Ltd. v. Federal Transit Administration*, 307 F.Supp.2d 1149, 1157 (D. Haw. 2004).  In

---

[9]    The transcription attached to Exh. 4 contains a typographical error.  As an Errata filed concurrently with this Reply explains, it incorrectly states "in accordance with Section **9**49 of the Civil Code"; instead, the referenced provision should be "Section **7**49".

*Sensible Traffic*, the Court held that, under Hawai'i law, the doctrine of res judicata applies when:

> 1) the claim asserted in the action in question was or could have been asserted in the prior action, 2) the parties in the present action are identical to, or in privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action

*Id.* at 1157. All those pre-requisites are satisfied here as to Equity 80.

First, the County was a party to Equity 80, which concerned lands in Aliomalu, Papa`a, and Moloa`a. Although the Reservation was not included, the properties which were the subject of Equity 80 were conveyed by the same Board of Education Deed. The County could have, but did not, challenge the validity of the Board of Education Deed in that proceeding. It is precluded from challenging it now.

Second, Mandalay, is in privity with Charles Rice, also a party to Equity 80, because Mandalay has succeeded to Charles Rice's ownership of the Reservation. And, even if it were not in privity, Hawai`i law allows offensive non-mutual use of *res judicata*. *See Exotics Hawaii-Kona, Inc. v. E.I. DuPont DeNemours*, 104 Haw. 358, 364, 90 P.2d 250, 256 (2004). Thus, Mandalay can invoke the doctrine against the County.

Third, Equity 80 went to final decree. County's Exh. P.

Finally, the Board of Education Deed is either valid for all purposes or it is valid for none. Invalidating the Board's deed, seventy-five years after Equity 80, would undermine the title to the more than 2,000 acres of land which were the subject of Equity 80 and have been held in private hands by many different owners for nearly 150 years. Having failed to raise these issues in Equity 80, the County cannot do so now.

### 2. Hoopii Cummings Conveyed All of Her Interest

The County argues that the 1913 Cummings Deed did not convey Hoopii's one-half interest. The County is wrong because (1) it ignores the plain language of the deed and the Cummings' clear intent to convey the one-half interest; (2) it is contrary to Judge Ezra's ruling; and (3) it has no standing to raise this issue.

The deed states that Hoopii "release[s] and quitclaim[s]" "all" her [1] right in and to the Reservation, and [2] possibility of dower in and to the Reservation. Exh. 9. Regardless of the specific form of the deed, it is clear that Parker and Hoopii intended to and did, in fact, divest themselves of their interests in the Reservation. But, even if there were some ambiguity in the deed, it is well-recognized that all doubts must be resolved in Mandalay's favor. *See State Savings & Loan Assoc. v. Kauaian Development Co., Inc.*, 62 Haw. 188, 205, 613 P.2d 1315, 1325 (1980)("any ambiguity [in the deed] must be resolved in favor of the grantees"); *State v. Hawaiian Dredging*

*Co.*, 48 Haw. 152, 178, 397 P.2d 593, 608 (1964)("[a] deed should be construed most favorably to the grantee").

Further, a stranger may not contest the validity of a deed. A party seeking to reform a deed must either be a party to the deed or in privity with a party to the deed. *See generally* Powell, Real Property §81-A.07[3][f]; *Richards v. Midkiff*, 48 Haw. 32, 41-42, 396 P.2d 49, 55-56 (1964). The County is neither. Further, the claimant must prove by clear and convincing evidence that the deed is wrong. Powell, *supra*.[10] The County has not attempted to carry this burden.

Finally, Judge Ezra addressed this issue in the Order when he stated the factual history of the Reservation, and noted that Hoopii conveyed all her interest. Exh. 1, Order at 6. The County cannot revisit this issue.

### B. The County Offers No Evidence of a Pre-1892 *mauka-makai* Road

There is no dispute that

(1) the Driveway leads from the end of Papa`a Road to the site of the Takai house on the Reservation[11] (Exh. 1, Order, at 10);

(2) L.C. Award 7583 does **not** mention any public road within the Reservation (Exh. 26);

---

[10] This argument applies equally to the County's challenge to the Board of Education Deed.

[11] The County's claim that it goes "to the beach" is irrelevant to the question of whether a road existed before 1892.

(3)   Grant 6103  does **not** mention any public road within the Reservation (Exh. 27);

(4)   the County has admitted that the Land Commission Notes' reference to "Pub. Roads & bridge" (Exh. 28) is to a road that runs parallel to the shore, not *mauka-makai* (Opposition at 13 and 21);

(5)   Map 1395 does **not** show any *mauka-makai* road in Papa`a (Exh. 23);

(6)   regardless of exactly where the Driveway is located or when it was built, the first evidence of the Driveway's existence is the 1931 Towill Map in connection with Equity 80 (County's Exh. F);

(7)   although there is no indication when the Driveway was built, the earliest usage of the Driveway testified to by *kama`aina* witnesses is in the 1930s (*see* Mandalay's Motion at Section II.E.3-II.E.10);

(8)   after 1946, the *kama`aina* witnesses either (a) ceased using the Driveway or (b) used it only with permission; and

(9)   there is **no** evidence of any public use of the Driveway after 1958.

The County offers no other evidence.  Its argument about a network of roads, while entertaining, is only conjecture unsupported by any evidence or any reasonable inference from the evidence.

The skill of W.H. Pease as a surveyor is irrelevant for two reasons.  First, the County acknowledges that the road mentioned in the Land Commission Notes is parallel to the shore and thus cannot be the Driveway.  Second, the County has failed to dispute that the Award and Grant are conclusive and cannot now be challenged.  If someone thought Pease was incompetent, they should have spoken up 150 years ago.

### C.    There Is No Evidence of a Public Right-of-way

The County does not dispute that, under Hawai`i law, (1) the elements for prescription are adverse, continuous, uninterrupted, open, notorious, exclusive use under a claim of right, with the knowledge and acquiescence of the servient owner for the prescriptive period, (2) the prescriptive period for a public right-of-way is "much larger" then the 20-year period for adverse possession, (3) any rights in land allowed or created by a tenant do not extend beyond the termination of his tenancy (and that action or inaction by Mr. Takai could not adversely affect the fee title), or (4) the County has the burden of proof on these issues.

The County offers nothing to refute Mandalay's argument that the use of the Driveway by *kama`aina* witnesses was permissive and based on neighborly practice.  Likewise, the County offers nothing to establish the necessary hostility or intent to deny true ownership.  Instead, the County merely contends that these issues involve questions of fact.  Opposition

at 26.  Fact questions they may be, but Mandalay's evidence is consistent and uncontroverted: there is no evidence supporting a prescriptive easement claim.  *See* Motion at 26-32.  If it had contrary evidence, the County was required to produce it before now.[12]

The County's recitation of the *kama`aina* testimony (Opposition at 13-18), shows (1) no usage of the Driveway before 1930, (2) no hostile use between 1930-46, and (3) no usage without permission after 1946.  This uncontroverted evidence is fatal to the County's prescriptive easement claim, since it shows unquestionably that whatever its nature, the usage was for less than 20 years, not for any "much larger" period.

### D.  Any Prescriptive Easement Has Been Lost by Reverse Adverse Possession

The County misses the point about Mandalay's reverse adverse possession argument.  Mandalay is not suggesting that the doctrine applies to government roads.  Rather, Mandalay correctly says it applies to a public right-of-way allegedly acquired by prescription.  *See* Motion at 34-36.  None of the *kama`aina* witnesses used the Driveway after 1958, at the latest, and there is no other evidence of public usage after 1958.  In Hawai`i an easement can be abandoned or extinguished by non-use, by

---

[12] The County is required to present contrary evidence raising a material dispute of fact.  Fed. R. Civ. Proc. Rule 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

destruction of the easement, or by the prevention of use by the servient owner or acquiescence of the dominant user. *Id.*  The County has offered nothing to undermine Mandalay's position that any alleged easement is barred by the 20 year statute of limitations since it has been nearly a half century since any of its witnesses used the driveway.

### E.    The 1977 Letter and Map Are an Admission There Is No Public Road and/or Right-of-way

The Declaration of George Yamamoto ("Yamamoto Declaration") does not have the effect the County seeks.  In fact, it works only **against** the County's position because it corroborates Mandalay's claim that the 1977 Letter contains an admission by the County that it had no right-of-way to Papa`a Bay.  In that respect, the Yamamoto Declaration provides additional evidence satisfying the requirements of Fed. R. Evid. 801(d)(2)(D).  As an employee of the County, Mr. Yamamoto has now affirmed the 1977 Letter signed by Mr. Morita was prepared and sent by County employees in the scope of their work.  The County sought a right-of-way over the Reservation[13] in 1977 because it had none.  Also, even as it is interpreted by Mr. Yamamoto, the letter is powerful evidence against the County.  If the public

---

[13]    The "Right of Entry" attached to the 1977 Letter identified the relevant "Description & Area" as "Over and across Lot designated by TMK: 4-9-06:5".  Exh. 2.  TMK 4-9-06:05 is the TMK for the beachfront portion of the Reservation.  Exh. 42, Wagner Rpt. at Exhibit "L".  The trail identified in Mr. Yamamoto's declaration, also known as Easement P-1, is located virtually entirely on an another parcel, which is not mentioned in the 1977 Letter.  *See* Wagner Reply Dec. at ¶5.

portion of Papa`a Road extended to the beach, as the County now says, it would not have been seeking a circuitous and inconvenient path down the southerly hillside.

Fed. R. Evid. 602 precludes the use of Mr. Yamamoto's declaration testimony to contradict, dispute or undermine the unambiguous evidence founded in the map attached to the 1977 Letter.[14] Rule 602 states: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Mr. Yamamoto's statement is intended to contradict and dispute the map and hypothesize what Mr. Mortia really intended.  However, while Mr. Yamamoto says he drafted the letter, there is no evidence that he (a) prepared (or even saw) the map, (b) prepared a different map not attached to the letter, (c) compiled the letter with the map and Right of Entry Agreement, (d) knew what Mr. Morita intended to show for the proposed right-of-way location, or (e) otherwise had the requisite personal knowledge in 1977 about what was being sought from the then-owner of the Reservation.

---

[14]  The letter says:  "Attached for your information, is a map which shows the approximate route to be surveyed."  Exh. 2. The attached map shows the route to be a direct extension of Papa`a Road.  *See supra* at 5.  The route shown is no where near the trail Mr. Yamamoto describes in his declaration. *Compare* Exh. 44.

Since it is lacking foundation regarding the map, Mr. Yamamoto's statement cannot be used by the County to undermine the Motion.

**F.    The County Cannot Acquire an Access Across the Reservation Without Paying Just Compensation**

The County suggests that the sovereign's prerogatives to provide easements and roads for the public good somehow entitles it to acquire public roads by merely asserting that desire.  Opposition at 11-13.  The County is wrong.  The taking power is subject to constitutional restrictions under both the State and Federal constitutions.  Since the County does not claim it paid compensation to any Reservation owner, these provisions preclude the County's claim of acquisition by prerogative.

Moreover, even if the County's prerogative argument had any validity, the County has no standing to pursue it.  The State, not the County, is the sovereign and the County has no power to exercise the prerogative.  The State has conceded it has no interest in the Reservation.  *See* Exh. 52.  The Court need look no further than this.

## III. CONCLUSION

Mandalay's motion should be granted determining that no public road and/or right-of-way exists within the Reservation.

DATED: Honolulu, Hawai`i, on <u>January 9, 2007</u>.

<u>/s/ Mei-Fei Kuo</u>
PAUL ALSTON
NEIL F. HULBERT
MEI-FEI KUO
TOM C. LEUTENEKER
Attorneys for Defendant
MANDALAY PROPERTIES HAWAI`I LLC